IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-1487-WJM-MEH

ASPEN CORPORATIONS, INC., a Delaware corporation d/b/a Aspen Media

Plaintiff,

v.

CARRIE MUNDT
DIZA BESNER,
JOSH OUDEH,
KEITH STREHLE,
RANDY BARE,
FELIX FERNANDEZ,

Defendants.

## ORDER GRANTING MOTION TO DISMISS

In this action, Plaintiff Aspen Corporations, Inc. ("Plaintiff" or "Aspen"), brings various claims against Defendants Carrie Mundt, Diza Besner, Josh Oudeh, Keith Strehle, Randy Bare (collectively, "Former Employees"), and Felix Fernandez ("Fernandez") (collectively, "Defendants"). (ECF No. 1.) Before the Court is Defendants' Motion to Dismiss (the "Motion"; ECF No. 35). For the reasons set forth below, the Court grants the Motion and dismisses the case without prejudice for lack of personal jurisdiction.

## I. BACKGROUND

The following factual summary is drawn from Plaintiff's complaint. (ECF No. 1.)

Plaintiff describes itself as a company "engaged in the business of business process outsourcing and marketing and research for business to business and

business to customer services," and names an entity called "ECCO Corp." ("ECCO") as another company "engaged in the business of process outsourcing." (*Id*. at 2–3, ¶¶ 1 & 7.) Plaintiff alleges that ECCO is co-owned by Fernandez and that Fernandez uses ECCO "to raid and compete with Aspen." (*Id*. at 3, ¶ 7.) Plaintiff is a Delaware corporation and alleges that its principal place of business is in Colorado. (*Id*. at 2, ¶ 1.) The Defendants are citizens of California, Florida, Iowa, Nebraska, Ohio, and Virginia. (*Id*. at 2–3, ¶¶ 2–7.)

In January 2017, Plaintiff and the "Dominican Republic affiliate of ECCO, ECCO Outsourcing Group, S.R.L. entered into an Outsourcing Partnership Agreement [the 'Agreement']." (*Id*. at 7, ¶ 22.) Plaintiff asserts that the Agreement "contained a section defining proprietary information, and restricting the use thereof." (*Id*.) In addition, Plaintiff alleges that the Agreement contained an "exclusivity" and "non circumvention" provisions "wherein ECCO agreed not to solicit, attempt to solicit, divert or appropriate, directly or indirectly, the business relationship with any Customer, person or entity providing goods or services to Aspen—which would include Aspen clients and employees." (*Id*.)[1] Plaintiff alleges, however, that the Agreement "became a 'front' or beachhead in [ECCO's] plan to raid Aspen" and steal its employees and clients. (*Id*.)

Furthermore, Plaintiff alleges that all of its employees are required to read and acknowledge the Aspen Media Employee Handbook ("Handbook"). (*Id*. at 5, ¶ 16.) Included in Section 18 of the Handbook is the following prohibition: "After you leave

---

[1] Even though Plaintiff asserts that the Agreement was executed by ECCO's Dominican Republic affiliate and not ECCO, Plaintiff repeatedly states that ECCO was a party to the Agreement. (*See, e.g.*, ECF No. 1 at 3, 7–9, ¶¶ 7, 22, 25, 31.) Plaintiff has not explained the basis for this assertion.

[your employment with Plaintiff], you are still legally prohibited from disclosing sensitive, proprietary, trade secret, or confidential information." (*Id*.; *see* ECF No. 1-1 at 2.) In addition, Plaintiff alleges that each of its employees are "required to sign a Confidentiality Agreement ['NDA'] restricting the disclosure and use of the confidential information and/or trade secrets of Aspen." (ECF No. 1 at 5, ¶ 16; *see, e.g.*, ECF No. 1-2.) Though not explicitly stated, it appears that Plaintiff is suggesting that each of the Former Employees read and acknowledged the Handbook and executed a NDA.

The Former Employees were initially employed by Plaintiff, where they held the following the positions: (1) client services manager; (2) director of business development and client management; (3) senior vice president of operations; and (4) "client reporting, invoicing and accounts payable/finance" employee. (ECF No. 1 at 6–7, ¶¶ 17–21.) Plaintiff alleges that the Former Employees were "intimately familiar with Aspen's clients and its confidential information." (*Id*.)

From November 14, 2017, until February 23, 2018, the Former Employees departed from their positions with Plaintiff and started working for ECCO. (*Id*.) As a result of their departure, Plaintiff alleges that it "began to lose business, projects and even relationships with several large clients." (*Id*. at 7, ¶ 23.) Plaintiff asserts that "[t]hese lost relationships and business can be directly tied to the confidential information improperly used and the contacts the Former Employees, in their positions of trust, had with these clients." (*Id*. at 8, ¶ 23.) Thus, Plaintiff alleges that "Defendants collectively conspired to utilize Aspen's confidential information and abuse their positions of trust to 'raid' Aspen by stealing key employees and clients to benefit

3

themselves." (*Id*. at 2.)

Plaintiff filed this action on June 14, 2018.  (ECF No. 1.)  Plaintiff brings claims against the Defendants for breach of contract, breach of fiduciary duty, misappropriation of trade secrets under the Colorado Uniform Trade Secrets Act (Colo. Rev. Stat. § 7-74-101), intentional interference with prospective business relationships, unjust enrichment, civil theft (Colo. Rev. Stat. 18-4-401), civil conspiracy, and intentional interference with contractual relations.  (*Id*. at 8–12.)  On August 22, 2018, Defendants moved to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), and 12(b)(7).  (ECF No. 35.)  Plaintiff subsequently filed a response to the Motion ("Response"; ECF No. 40), to which Defendants replied (ECF No. 41).

## II.  LEGAL STANDARD

### A.  Considering Personal Jurisdiction Before Subject-Matter Jurisdiction

In the Motion, Defendants raise the possibility that Plaintiff is a citizen of California or Florida, which, if true, would destroy diversity jurisdiction.  Thus, the Court must determine at the outset the appropriate sequence for addressing the issues presented by this case.  With possible exceptions not applicable here, "jurisdiction generally must precede merits in dispositional order."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999); *see also Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000).  "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them."  *Id*.

4

While "there is no unyielding jurisdictional hierarchy" requiring federal courts to sequence one jurisdictional issue before the other, "in most instances subject-matter jurisdiction will involve no arduous inquiry" and "both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Ruhrgas*, 526 U.S. at 578, 587–88. However, if "a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Id*. at 588.

Upon review of the parties' arguments regarding both jurisdictional issues, the Court deems it appropriate to address personal jurisdiction first. The personal jurisdiction question presents straightforward issues regarding the sufficiency of Defendants' contacts with Colorado. Conversely, subject-matter jurisdiction presents difficult and novel issues regarding the citizenship of Plaintiff. This is because the parties' competing submissions raise the possibility that no location can be considered Plaintiff's principal place of business or nerve center. Also, as discussed below, Plaintiff has only recently attempted to transform itself into an explicitly Colorado-based entity. Given these considerations, the Court finds it appropriate and efficient to first address personal jurisdiction.

B.  **Personal Jurisdiction Standard**

The purpose of a motion to dismiss pursuant to Rule 12(b)(2) is to test whether the Court has personal jurisdiction over the named parties. The plaintiff bears the

5

burden of establishing personal jurisdiction over a defendant. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). As is true here, when the court does not hold an evidentiary hearing before ruling on jurisdiction, "the plaintiff need only make a *prima facie* showing" of personal jurisdiction to defeat a motion to dismiss. *Id*. A plaintiff "may make this *prima facie* showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). To defeat the plaintiff's *prima facie* case, a defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

To obtain personal jurisdiction over a nonresident defendant, the plaintiff "must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Colorado's long arm statute confers the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005) (referring to Colo. Rev. Stat. § 13-1-124). Thus, the Court need only address the constitutional question of whether the exercise of personal jurisdiction over the defendant comports with due process. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (the state jurisdictional analysis in Colorado "effectively collapses into the second,

constitutional, analysis").

At this stage, the Court accepts the well-pled (that is, plausible, non-conclusory, and non-speculative) factual allegations of the complaint as true to determine whether Plaintiff has made a *prima facie* showing that personal jurisdiction exists. *Id.* Any factual conflicts arising from affidavits or other submitted materials are resolved in Plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

### III. ANALYSIS

**A.     The Court Need Not Address Whether General Jurisdiction Exists**

To assert personal jurisdiction, the threshold constitutional question is whether the party has minimum contacts with the forum state. *See Burger King*, 471 U.S. at 473–76. This question can be answered in the affirmative in one of two ways, providing a court with either general or specific personal jurisdiction. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532–33 (10th Cir. 1996). "General jurisdiction lies when the defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." *Id.* at 1533 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 & n.9 (1984)).

Neither party argues that Defendants' contacts with Colorado are so continuous and systematic that general jurisdiction can be exercised over them. (*See* ECF Nos. 1, 35 at 5–7, 40 at 4–7, 41 at 3–5.) Instead, the parties' arguments in regard to personal jurisdiction focus on whether specific jurisdiction exists. (*Id.*) Accordingly, the Court will only examine whether it may properly exercise specific jurisdiction over the Defendants.

7

**B.	Specific Jurisdiction**

"A specific jurisdiction analysis involves a two-step inquiry." *Benton*, 375 F.3d at 1075. "First [the court] must consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "Second if the defendant's actions create sufficient minimum contacts, [the court] must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted).

As discussed below, Plaintiff fails to establish minimum contacts because it cannot show the Defendants purposefully directed their activities at Colorado or purposely availed themselves of the laws of Colorado. Therefore, the Court's analysis will focus only on the first element of the specific jurisdiction analysis.

1.	Minimum Contacts Standard

The "'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 472). The Court addresses each inquiry in turn.

The first step of the inquiry can appear in different guises. *Dudnikov*, 514 F.3d at 1071. "In the tort context, [courts] ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, [courts] ask

whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Id*. In either context, however, the aim of the inquiry is "to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475).

Three additional principles further inform the Court's analysis here. First, case law makes clear that the requisite "minimum contacts" "must arise out of contacts that the 'defendant *himself*' creates with the forum States." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original). Thus, "the unilateral activity of another party is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State." *Dudnikov*, 514 F.3d at 1073 (internal quotation marks omitted).

Second, the Court's "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286. Rather, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285.

Third, the "mere foreseeability of causing an injury in the forum state is, standing alone, insufficient." *Dudnikov*, 514 F.3d at 1077. A plaintiff must establish "not only

9

that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state.*" *Id.* (emphasis in original).

2. Application

The Court finds that Plaintiff has failed to make a sufficient *prima facie* showing of minimum contacts. At the outset, the Court finds that Plaintiff has categorically failed to develop any argument regarding whether this Court has personal jurisdiction over this case. In its Response, Plaintiff does not address any of the arguments concerning personal jurisdiction that were made in Defendants' Motion. (ECF No. 40 at 4–7.) Instead, Plaintiff states its view of the legal standard for specific jurisdiction and follows with a page-and-a-half string cite that allegedly sets forth the holdings in cases Plaintiff believes to be analogous to this action. (*Id.* at 4–6.) Plaintiff then declares that "the Court has personal jurisdiction over the Former Employees because they entered into a contractual relationship with a Colorado company and benefitted therefrom," and because "the Former Employees could have 'reasonably expected that the brunt of their misappropriation of the Colorado employer's trade secrets would be felt in Colorado.'" (*Id.* at 6.)

Plaintiff, however, does not develop any argument or apply the law of its cited cases to the facts of this action. Instead, Plaintiff merely summarily declares that the Court has personal jurisdiction over Defendants. The Court considers such inadequately developed arguments to be deemed forfeited. *See, e.g.*, *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1148 n.3 (10th Cir. 2008); *Rojem v.*

*Gibson*, 245 F.3d 1130, 1141 n.8 (10th Cir. 2001).

Nonetheless, the Court will briefly address the cases Plaintiff cites and the issue of whether it has personal jurisdiction over this action. After reviewing the cases, the Court finds them clearly distinguishable from the case at hand:

- In *Equifax Servs., Inc. v. Hitz*, the Tenth Circuit found that a California employee had minimum contacts with Kansas based on the following findings: (1) the employee's only direct supervision came from his employer in Kansas; (2) the employee had regular contact with his co-workers in Kansas; (3) the employee's customers were invoiced from and made payment directly to his employer in Kansas; (4) the employee and his personnel were paid directly by his Kansas employer; (5) the employer's Kansas office reimbursed expenses for the employee's offices and provided those offices with necessary material and supplies; (6) the employee negotiated the terms of his employment contract directly with his employer's president in Kansas; (7) there were no intermediaries between the employee and his employer in Kansas; (8) any disputes regarding the employee's employment contract would originate in Kansas; (9) the employee's employment contract provided that it would be governed by Kansas law; and (10) the employee traveled to Kansas for a training session and for a formal reprimand. 905 F.2d 1355, 1358–59 (10th Cir. 1990).

- In *Marcus Food Co. v. DiPanfilo*, the Tenth Circuit found that a sales and purchasing agent from Canada had minimum contacts with Kansas based on the following findings: (1) the agent communicated with the company's staff at its headquarters in Kansas on at least a monthly basis, and often on a weekly or daily occasion; (2) the agent received benefits from the company in the form of reimbursements for his office rent and expenses; (3) the agent submitted these reimbursement requests to the company's office in Kansas; (4) the requests were processed and paid from the company's office in Kansas; (5) the agent personally came to Kansas on at least two occasions as a result of his relationship with the Kansas company; and (6) the parties conduct demonstrated that they intended to create a continuing relationship in which the agent would receive compensation in exchange for his work. 671 F.3d 1159, 1167–68 (10th Cir. 2011). Thus, the court found that the parties' conduct over the 10-year agency relationship revealed sufficient evidence of the agent's contacts with Kansas. *Id*.

- In *Servi-Tech, Inc. v. Burmeister*, the court found that an Iowa employee had minimum contacts with Kansas based on the following findings: (1) the employee had contracted to work for a Kansas company; (2) the employee was overseen by managers in Kansas; (3) the employee utilized a pickup truck, 4-wheeler, computer equipment, sampling supplies, tools, and other equipment procured

11

- and distributed to him through the company's headquarters in Kansas; (4) the employee came to Kansas twice; (5) the employee's wages and benefits were managed and processed at the company's headquarters in Kansas; (6) the employee had frequent contact with company's headquarters in Kansas; (7) the curriculum and content for the employee's training originated from Kansas; and (8) the employee intentionally injured a Kansas Company. 2016 WL 5944502, at *1–3 (D. Kan. Oct. 13, 2016).

- In *KAABOOWorks Servs., LLC v. Pilsl*, the United States Magistrate Judge found that a Florida employee had minimum contacts with Colorado based on the following findings: (1) the employee was an employee of a Colorado-based company; (2) the actual terms of at least one contract entered into by the employee and his Colorado employer identified "Denver County, Colorado," as the sole jurisdiction for disputes; (3) the employee was sufficiently aware that his employment activities had a direct connection to Colorado; (4) the employee traveled often to Colorado for business meetings; (5) the employee maintained constant communication with the employer's office in Colorado; (6) the employee willingly entered into his employment relationship, which he knew would center largely around the employer's Colorado headquarters; (7) the lawsuit was about the employee not returning confidential information the employee had received in Colorado; and (8) any returned information would have been transmitted to the employer in Colorado. 2018 WL 2984801, at *4 (D. Colo. June 14, 2018), *report and recommendation adopted*, 2018 WL 4368670 (D. Colo. July 5, 2018).

- In *KEBD Enterprises, LLC v. Hider*, the court found that a Georgia employee had minimum contacts with Colorado based on the following findings: (1) the non-disclosure agreement that the employee had entered into with his Colorado employer specifically provided that it would be governed by Colorado law; (2) the confidential information that the employee received was developed and maintained in Colorado; and (3) the orders the employee received from his customers were filled by the employer in Colorado. 2009 WL 1504748, at *5 (D. Colo. May 26, 2009).

Notably, in summarizing the holdings of these cases, Plaintiff significantly understates the extent of various defendants' contacts with the forum state. (*See* ECF No. 40 at 4–6.) For instance, according to Plaintiff, the employee in *Equifax* "had minimum contacts with Kansas through his regular communications with Kansas employer and negotiation of employment contract with president of employer." (*Id*. at 4.) A review of the case, however, clearly shows that the employee had many more

12

connections with Kansas than Plaintiff suggests. This is only one of what appear to be myriad inconsistencies between Plaintiff's characterizations of the cases' holdings, and what the cases actually say. (*See* ECF No. 40 at 4–6.) The Court finds that it need not go into more detail about the numerous distinctions between Plaintiff's cited cases and the action at hand (*see* ECF No. 41 at 4–5) because even a cursory glance at the record shows that Plaintiff does not come close to alleging the extent or type of minimum contacts that were found in these cases. (*See* ECF Nos. 1 & 40 at 4–7.)

Moreover, in each of these cases the plaintiffs were clearly established entities in their forum state when the defendants' minimum contacts arose. In the case at hand, however, it is contested whether Plaintiff was an established Colorado entity when Defendants' alleged minimum contacts transpired.

In the Complaint, Plaintiff asserts, without support, that its principal place of business is in Colorado. (ECF No. 1 at 2, ¶ 1.) Defendants challenge this assertion in the Motion when they address subject-matter jurisdiction. (ECF No. 35 at 3–5.) Defendants point out that Plaintiff's own exhibits to the Complaint, which provide the NDA and the Agreement, expressly state that Plaintiff's "principal offices" and "office" are located in Florida. (*Id*. at 3; *see* ECF Nos. 1-2 at 2 & 1-3 at 2.) In addition, Defendants provide several documents where Plaintiff listed its "principal office address" as a Florida address, its "mailing address" as a California address, and stated that its sole director and sole officer are located in California and Florida, respectively.[2]

---

[2] These documents include corporate filings Plaintiff submitted with the "Florida Department of State - Division of Corporations" (ECF Nos. 35-2 & 35-3) and with the Colorado Secretary of State (ECF Nos. 35-4, 35-5, 35-6, 35-7).

(ECF No. 35 at 3–4; see ECF Nos. 35-2 at 2, 35-3 at 4–5, 35-4 at 1, 35-6 at 1–3, 35-7 at 1–2.) Moreover, the Former Employees assert via affidavits that they knew Plaintiff's "principal place of business" to be located in Florida, "based upon [their] employment, payroll, and tax documents provided to [them] by Plaintiff." (ECF Nos. 35-8 ¶ 4, 35-10 ¶ 4, 35-11 ¶ 4, 35-12 ¶ 4, 35-13 ¶ 4.) Thus, the Defendants argue that Plaintiff's principal place of business is not in Colorado but in Florida or California.

In its Response, Plaintiff asserts, in its argument regarding subject-matter jurisdiction, that the Defendants are mistaken and that its principal place of business is in fact in Colorado. (ECF No. 40 at 3.) Instead of addressing the arguments made in the Motion or the evidence submitted in support thereof, Plaintiff attaches the following exhibits to bolster its assertion: (1) a declaration by Prateek Gattani (Plaintiff's sole chairman, director, and shareholder) ("Declaration"; ECF No. 40-1); (2) a "Corporate Resolution" by Mr. Gattani ("Resolution"; ECF No. 40-3); and (3) a screenshot of "Aspen's Website Homepage" ("Homepage"; ECF No. 40-4). (ECF No. 40 at 3.)

In the Declaration, Mr. Gattani asserts that Colorado is where "Aspen's headquarters or 'principal place of business' is located" and "where Aspen's officers direct, control and coordinate the corporation's activities." (ECF No. 40-1 at 4, ¶ 12.) In support, Mr. Gattani highlights how Plaintiff has a call center in Colorado (as well as in Tennessee and India), how its human resources department is located in Colorado, how the firm physically keeps its employee personnel files in Colorado, how its employees log into a server located in Colorado, and how the company stores data in Colorado. (*Id*. at 4–5, ¶¶ 12–14.)

Plaintiff's next exhibit is the Resolution, which was executed by Mr. Gattani

14

approximately two weeks before this lawsuit was filed. (ECF No. 40-3.) The Resolution provides, in pertinent part, as follows:

> [T]he principal place of business and headquarters for the Corporation [shall] be reflected on all filings of the Corporation and ratified as [Plaintiff's Colorado address], the long-standing headquarters and principal place of business of the corporation.

(*Id*. at 2.)

The final exhibit that Plaintiff submits is a screenshot of its website Homepage, taken three weeks before this action was filed. (ECF No. 40 at 3; *see* ECF No. 40-4.) Plaintiff claims that it "designated its principal place of business as [Colorado]" when it listed its Colorado address at the bottom of the Homepage and next to the words "Get in touch." (ECF Nos. 40 at 3 & 40-4 at 6.)

Judging from these materials, it appears as if Plaintiff anticipated the potential subject-matter jurisdiction challenge and took steps, shortly before filing the lawsuit, in hopes of avoiding that challenge. For instance, the Resolution stating that Colorado is "the long-standing headquarters and principal place of business of the corporation" was executed approximately two weeks before Plaintiff filed this lawsuit. In addition, a review of Plaintiff's website, as displayed in the Court's Exhibit 1 (attached), reveals that Plaintiff no longer holds Colorado out to be its principal place of business, as the Homepage now lists a Tennessee address at which members of the public may communicate with Plaintiff. *See* Aspen Media LLC, http://aspenmediallc.com (last visited Mar. 18, 2019).

This sudden transformation of Plaintiff's principal place of business into a Colorado entity is part of the reason why the Court has gone directly to personal

jurisdiction, as subject-matter jurisdiction raises a difficult and novel question. But the cases Plaintiff cites in support of its argument that this Court has personal jurisdiction over this action appear to be relevant only if Plaintiff without doubt, is an established Colorado entity. Perhaps Plaintiff can be considered a Colorado entity now, but the issue is whether they were a Colorado entity when Defendants' alleged minimum contacts occurred. If these alleged minimum contacts took place prior to Plaintiff's transformation into a Colorado entity, Plaintiff's cases do not appear to provide any support for a finding of personal jurisdiction and the Court will not be able to definitively conclude that Defendants reasonably anticipated being haled into court in Colorado.

Moreover, the Complaint offers no factual allegations connecting any Defendant to Colorado, nor allegations that Defendants purposefully directed their activities at Colorado. (*See* ECF No. 1.) Similarly, nothing in the Complaint suggests that Defendants purposefully availed themselves of the privilege of conducting activities or consummating a transaction in Colorado. (*Id.*)

In the Motion, Defendants assert that none of the Defendants have sufficient contacts with Colorado to satisfy the "minimum contacts" standard. (ECF No. 35 at 6.) In particular, Defendants state that only two of them have ever been to Colorado for business with Plaintiff, and these two Defendants each only visited the state "three (3) times to attend brief, isolated meetings at the request of Plaintiff." (ECF Nos. 35 at 6–7, 35-8 ¶ 6, 35-12 ¶ 6.) The other four Defendants state that they "have never done any business in the State of Colorado on behalf of Plaintiff or any other employer." (ECF Nos. 35-9 ¶ 6, 35-10 ¶ 7, 35-11 ¶ 7, 35-13 ¶ 7.)

In addition, Defendants assert that they "have never signed any contract or

entered into any other agreement with Plaintiff or any other party where [they] purposefully availed [themselves] of or subjected [themselves] to the laws of the State of Colorado or the jurisdiction of its courts." (ECF Nos. 35-8 ¶ 7, 35-9 ¶ 7, 35-10 ¶ 8, 35-11 ¶ 8, 35-12 ¶ 7, 35-13 ¶ 8.) In support, Defendants state that "Plaintiff's own Complaint shows that Defendants have never executed any contract with Plaintiff that would purposefully avail themselves of the laws of the State of Colorado" because "the only choice of law or choice of jurisdiction provision" in Plaintiff's attached contracts "names the State of Florida." (ECF No. 35 at 7; see ECF No. 1-3 at 5.) As previously discussed, Plaintiff does not rebut any of these arguments or provide any evidence to the contrary. Instead, Plaintiff merely string cites several cases before summarily concluding that this Court has personal jurisdiction over the Defendants.

In sum, the Court finds it reasonable to conclude that Defendants' contacts with Colorado are so "attenuated" that Defendants could not "reasonably anticipate being haled into court [here]." *Burger King Corp.*, 471 U.S. at 474–75. Accordingly, the Court concludes that Plaintiff has not demonstrated that Defendants' actions created sufficient minimum contacts with Colorado. Because Plaintiff has failed to make a *prima facie* showing of minimum contacts to defeat a motion to dismiss, the Court does not need to consider whether Plaintiff's injuries arise out of Defendant's forum-related activities. Nor does it need to consider whether the exercise of personal jurisdiction over the Defendant would offend traditional notions of fair play and substantial justice. Since the Court has determined that it does not have personal jurisdiction, the Court must dismiss the case without prejudice.

Finally, the Court has considered *sua sponte* if it would be more fitting to grant

Plaintiff leave to amend its Complaint. However, Federal Rule of Civil Procedure 15(a)(1)(B) permits a party to amend its complaint "as a matter course" within 21 days after service of a responsive pleading *or* a motion under Rule 12(b), (e), or (f), whichever is earlier. Defendants have not filed an answer, and they have filed a Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), and 12(b)(7). (ECF No. 35.)

Accordingly, Defendants' Motion to Dismiss by operation of law gave Plaintiff ample opportunity by amending its Complaint to allege additional facts to strengthen its position on matters material to this Court's jurisdiction over the putative Defendants. Plaintiff chose not take advantage of this opportunity, nor does the Response give the Court any reason to predict that Plaintiff *could* successfully amend its Complaint in this fashion. Thus, the Court finds that in these circumstances further leave to amend (beyond what Plaintiff already had under Rule 15(a)(1)(B)) is not warranted or appropriate.

## IV.  CONCLUSION

For the reasons set for above, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss (ECF No. 35) is GRANTED as set forth above;
2. Plaintiff's claims are DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction;
3. The Clerk of the Court shall enter judgment in favor of Defendants and against Plaintiff, and shall terminate this case; and
4. Defendants shall have their costs, if any, upon compliance with D.C.COLO.LCivR 54.1.

Dated this 18th day of March, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge

